UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JONATHAN PETROSINO, individually and on behalf of all others similarly situated,<br><br>             Plaintiff,<br><br>   v.<br><br>FASTENAL COMPANY,<br><br>             Defendant. | Case No. 1:22-cv-00705-MAD-DJS |

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

# TABLE OF CONTENTS

**PAGE(S)**

INTRODUCTION ........................................................................................................... 1

BRIEF CONTEXTUAL BACKGROUND ...................................................................... 2

ARGUMENT .................................................................................................................. 3

I.      PLAINTIFF HAS ARTICLE III STANDING ..................................................... 3

        A.      Plaintiff Alleges an Economic Loss................................................... 3

        B.      Defendant Does Not Argue That The Time Value Of Money Is
                Insufficient To Establish Article III Standing...................................... 6

II.     THE FIRST DEPARTMENT'S RULING IN *VEGA* CONTROLS THIS
        ACTION ............................................................................................................. 6

        A.      At Least 18 Courts To Consider *Vega* Have Held That An
                Employee Has A Private Right Of Action For Late Wage
                Payments; Zero Have Disagreed........................................................ 7

        B.      Courts Held That A Private Right Of Action Exists Long Before
                *Vega* .................................................................................................. 9

        C.      Failure To Make Timely Payment Of Wages Has Dire
                Consequences For The Low-Income Workers NYLL § 191 Was
                Designed To Protect........................................................................... 11

III.    THERE IS AN EXPRESS PRIVATE RIGHT OF ACTION FOR
        VIOLATIONS OF NYLL § 191 ....................................................................... 13

        A.      Wages Become "Unpaid" If Not Paid When They are Due ................. 13

        B.      Legislative Memoranda From 1966 And 1967 Show An Intent To
                Create A Private Right Of Action With Liquidated Damages From
                Late Payment Of Wages .................................................................. 15

        C.      The "No Wage Theft Loophole Act of 2021" Shows The New
                York Legislature's Support For *Vega*'s Interpretation Of NYLL §
                198........................................................................................................ 17

        D.      The New York Department Of Labor ("DOL") Has Explicitly Held
                That A Private Right Of Action Exists .................................................. 17

        E.      NYLL § 218 Does Not Address Violation of NYLL § 191 ................. 18

IV.     PLAINTIFF IS ENTITLED TO LIQUIDATED DAMAGES ......................... 20

        A.      Defendant's Late Payments Do Not Exempt It From Liquidated
                Damages.............................................................................................. 20

        B.      Defendant Incorrectly Conflates Injury With Damages ...................... 23

i

V.      NYLL § 191 ALSO PROVIDES AN IMPLIED PRIVATE RIGHT OF
        ACTION ...................................................................................................................... 24

# TABLE OF AUTHORITIES

**PAGE(S)**

**CASES**

*Beh v. Community Care Companions, Inc.,*
    2021 WL 3914297 (W.D.N.Y. Feb. 1, 2021) ............................................................. 9

*Belizaire v. Rav Investigative & Sec. Servs.,*
    61 F. Supp. 3d 336 (S.D.N.Y. 2014) ..................................................................... 10

*Biggs v. Wilson,*
    1 F.3d 1537 (9th Cir. 1993) ......................................................................... 13, 14

*Brooks v. Village of Ridgefield Park,*
    185 F.3d 130 (3d Cir. 1999) ............................................................................. 15

*Brooks v. Village of Ridgefield Park,*
    978 F. Supp. 613 (D.N.J. 1997) .................................................................... 14, 15

*Caccavale v. Hewlett-Packard Co.,*
    Case No. 20-cv-00974 (E.D.N.Y.) ...................................................................... 9

*Caul v. Petco Animal Supplies, Inc.,*
    2021 WL 4407856 (E.D.N.Y. Sept. 27, 2021) ................................................... passim

*Chowdhury v. Hamza Express Food Corp.,*
    666 Fed. Appx. 59 (2d Cir. Dec. 7, 2016) ............................................................ 21

*Corporan v. Regeneron Pharmaceuticals, Inc..*
    Case No. 21-cv-05069-CS (S.D.N.Y.) .................................................................. 5, 8

*Cuzco v. Orion Builders, Inc.,*
    2010 WL 2143662 (S.D.N.Y. May 26, 2010) ......................................................... 10

*Davis v. Banana Republic, LL*
    Case No. 21-cv-06160-KAM (E.D.N.Y.).............................................................. 5, 8

*Donovan v. Kaszycki & Sons Contractors, Inc.,*
    959 F. Supp. 860 (S.D.N.Y. 1984) ...................................................................... 15

*Duverny v. Hercules Med. P.C.,*
    2020 WL 1033048 (S.D.N.Y. Mar. 3, 2020).......................................................... 9

*Elhassa v. Hallmark Aviation Services, L.P.,*
    2022 WL 563264 (S.D.N.Y. Feb. 24, 2022) ....................................................... 8, 25

*Gaughan v. Rubenstein*,
  261 F. Supp. 3d 390 (S.D.N.Y. 2017) ................................................................. 10

*Gillett v. Zara USA, Inc.*,
  2022 WL 3285275 (S.D.N.Y. Aug. 10, 2022) ..................................................... 4, 8

*Gonzales v. Gan Israel Pre-Sch.*,
  2014 WL 1011070 (E.D.N.Y. Mar. 14, 2014) ....................................................... 11

*Gottlieb v. Kenneth D. Laub & Co.*,
  82 N.Y.2d 457 (1993) ........................................................................................... 19

*Gordon v. Bluetriton Brands, Inc.*,
  Case No. 1:22-cv-02138-JMF (S.D.N.Y.) .................................................. 4, 7, 20, 24

*Habitat Educ. Ctr. v. U.S. Forest Serv.*,
  607 F.3d 453 (7th Cir. 2010) ................................................................................. 6

*Jones v. Nike Retail Svcs., Inc.*,
  2022 WL 4007056 (E.D.N.Y. Aug. 30, 2022) ..................................................... 5, 7

*Konkur v. Utica Academy of Science Charter Sch.*,
  38 NY3d 38 (2022) ............................................................................................... 24

*Levy v. Endeavor Air Inc.*,
  2022 WL 16645829 (E.D.N.Y. Nov. 1, 2022) ..................................................... 4, 7

*Lopez-Serrano v. Rockmore*,
  132 F. Supp. 3d 390 (E.D.N.Y. 2015) ................................................................. 10

*Mabe v. Wal-Mart Assocs., Inc.*,
  2021 WL 1062566 (N.D.N.Y. Mar. 18, 2021) ...................................................... 8

*Mabe v. Wal-Mart Associates, Inc.*,
  2022 WL 874311 (N.D.N.Y. Mar. 24, 2022) .............................................. 8, 19, 25

*Moran Towing & Transp. Co. v. N.Y. State Tax Com.*,
  72 N.Y.2d 166 (1988) ........................................................................................... 18

*Myers v. Hertz Corp.*,
  624 F.3d 537 (2d Cir. 2010) ................................................................................. 10

*Pachter v. Bernard Hodes Grp., Inc.*,
  10 N.Y.3d 609 (2008) ........................................................................................... 11

*Pashaian v. Eccelston Properties, Ltd.*,
  1993 WL 322835 (S.D.N.Y. Aug. 16, 1993) ....................................................... 10

*People v. Robinson*,
   95 N.Y.2d 179 (2000)............................................................................................ 17

*People v. Vetri*,
   309 N.Y. 401 (1955)........................................................................................ 12, 22

*Philips v. Max Finkelstein, Inc.*,
   73 Misc. 3d 1 (N.Y. App. Term 2d Dep't Aug. 26, 2021) ........................... 8, 18, 19

*Poplawski v. Metroplex on the Atl., L.L.C.*,
   2012 WL 1107711 (E.D.N.Y. Apr. 2, 2012) .......................................................... 10

*Porsch v. LLR, Inc.*,
   380 F. Supp. 3d 418 (S.D.N.Y. 2019) ...................................................................... 6

*Quintanilla v. Kabco Pharmaceuticals, Inc., et al.*
   Case No. 19-cv-06752 (E.D.N.Y.) ........................................................................... 9

*Rana v. Islam*,
   887 F.3d 118 (2d Cir. 2018) ................................................................................... 21

*Rodrigue v. Lowe's Home Centers, LLC*,
   2021 WL 3848268 (E.D.N.Y. Aug. 27, 2021) ...................................................... 1, 8

*Rodriguez v. Williams-Sonoma, Inc.*,
   Case No. 22-cv-02436-GRB-JMW (E.D.N.Y.)......................................................... 4

*Rojas v. Hi-Tech Metals, Inc.*,
   2019 WL 4570161 (Sup. Ct. Queens Cnty. Sept. 11, 2019) .................................... 9

*Sarmiento Perez v. Comhar Group LLC*,
   2020 WL 1364908 (E.D.N.Y. Mar. 6, 2020)........................................................... 23

*Sav. Bank v. O'Neil*,
   324 U.S. 697 (1945) ................................................................................. 15, 21, 22, 23

*Scott v. Whole Foods Market Grp., Inc.*,
   2019 WL 1559424 (E.D.N.Y. Apr. 9, 2019) ............................................... 11, 23, 25

*Sorto v. Diversified Maint. Sys.*,
   2020 WL 8413553 (E.D.N.Y. Nov. 15, 2020) .................................................. 19, 25

*Sorto v. Diversified Maint. Sys.*,
   2020 WL 7693108 (E.D.N.Y. Dec. 28, 2020)........................................................... 9

*Spokeo, Inc. v. Robins*,
   136 S. Ct. 1540 (2016) ............................................................................................. 6

*TransUnion LLC v. Ramirez*,
  141 S. Ct. 2190 (2021) ................................................................... 23, 24

*Truelove v. Northeast Capital & Advisory*,
  95 N.Y.2d 220 (2000) ........................................................................ 19

*Urtubia v. B.A. Victory Corp.*,
  857 F. Supp. 2d 476 (S.D.N.Y. 2012) ............................................... 10

*V.S. v. Muhammad*,
  595 F.3d 426 (2d Cir. 2010) ............................................................... 7

*Vega v. CM & Assocs. Constr. Mgmt., LLC*,
  175 A.D.3d 1144 (N.Y. App. Div. 2019) ................................... passim

*Wiggins v. Hain Pure Protein Corp.*,
  829 F. Supp. 2d 231 (S.D.N.Y. 2011) ................................................. 9

*Xochimitl v. Pita Grill of Hell's Kitchen, Inc.*,
  2016 WL 4704917 (S.D.N.Y. Sept. 8, 2016) ..................................... 21

## STATUTES

29 U.S.C. § 216(b) ....................................................................... 20, 22

New York Labor Law ("NYLL") § 191 ......................................... passim

New York Labor Law ("NYLL") § 198 ......................................... passim

## OTHER AUTHORITIES

LABOR LAW ARTICLE: 6: A MISUNDERSTOOD LAW THAT FULLY PROTECTS ALL EMPLOYEES
  WAGES,
  80 Alb. L. Rev. 1355 (2016/2017) ..................................................... 12

## INTRODUCTION

Under New York Labor Law ("NYLL") § 191, Defendant is required to pay its manual workers on a weekly basis. Defendant failed to do so. Defendant does not dispute that this is the law or that it violated this law. Instead, Defendant seeks to dismiss Plaintiff's complaint based on arguments that have already been considered and rejected by numerous New York courts.

First, Defendant argues that Plaintiff lacks Article III standing. "That argument fails to persuade" because "the late payment of wages is a concrete harm. '[T]emporary deprivation of money to which a plaintiff has a right constitutes a sufficient injury in fact to establish Article III standing.'" *Caul v. Petco Animal Supplies, Inc.*, 2021 WL 4407856, at *4 (E.D.N.Y. Sept. 27, 2021).

Defendant then argues there is "no private right of action" under NYLL § 191. But that is belied by the holding of the highest New York state court to consider the issue—*Vega v. CM & Assocs. Constr. Mgmt., LLC*, 175 A.D.3d 1144 (N.Y. App. Div. 2019)—where the First Department held that "New York Labor Law § 198(1-a) expressly provides a private right of action for a violation of Labor Law § 191." *Id*. at 1146. To no surprise, "[s]ince *Vega*, every court in this Circuit to consider that decision appears to have followed its construction of the New York Labor Law … and defendants present no persuasive reason to do otherwise." *Rodrigue v. Lowe's Home Centers, LLC*, 2021 WL 3848268, at *5 (E.D.N.Y. Aug. 27, 2021).

Defendant's argument that liquidated damages are not available has also been repeatedly rejected. *See Vega*, 175 A.D.3d at 1145 (holding that "Section 198(1-a) allows an award of damages based on untimely payments" and that "underpayment" for purposes of Section 198(1-a) occurs "[t]he moment that an employer fail[s] to pay wages in compliance with section 191(1)(a)."); *Rodrigue*, 2021 WL 3848268, at *5 ("Here, a state intermediate court—the Appellate

Division's First Department—has held that New York Labor Law permits employees to seek liquidated damages for the untimely payment of wages, even if wages are no longer past due.").

The numbers do not lie.  There is a reason why the arguments Defendant is making keep being rejected.  It is because they are wrong.

## BRIEF CONTEXTUAL BACKGROUND

Section 191(1)(a)(i) of the New York Labor Law ("NYLL") states:

> 1.  Every employer shall pay wages in accordance with the following provisions:
>
> a.  Manual worker.--- (i) A manual worker shall be paid weekly and not later than seven calendar days after the end of the week in which the wages are earned.

Section 198(1-a), in turn, provides that: "In any action instituted in the courts upon a wage claim by an employee or the commissioner in which the employee prevails, the court shall allow such employee to recover the full amount of any underpayment, all reasonable attorney's fees, prejudgment interest as required under the civil practice law and rules, <u>and, unless the employer proves a good faith basis to believe that its underpayment of wages was in compliance with the law, an additional amount as liquidated damages equal to one hundred percent of the total amount of the wages found to be due</u>." (emphasis added).

Here, Plaintiff alleges "[a]t least 25% of [his] job responsibilities at Fastenal included manual labor, including tasks such as frequently lifting and carrying packages weighing 25 to 50 pounds, and even up to 100 pounds, receiving and unloading deliveries, unloading and breaking down pallets of inventory, stocking inventory at warehouses and consumer-facing locations, driving a forklift, and shipping and handling customer orders."  Compl. ¶ 11.[1]

---

[1] Per the New York Department of Labor, "[i]t has been the long-standing interpretation of this Department that individuals who spend more than 25% of working time engaged in 'physical labor' fit within the meaning of the term 'manual worker.'  Furthermore, the term 'physical

<u>**ARGUMENT**</u>

**I.     PLAINTIFF HAS ARTICLE III STANDING**

    **A.     Plaintiff Alleges an Economic Loss**

Defendant argues Plaintiff lacks standing under Article III because he has "not alleged any economic loss."  Motion to Dismiss ("MTD") at 7.  But Plaintiff has alleged economic harm:  the loss of time value of money owed to him.  *See* Compl. ¶ 11 ("[F]or half of each biweekly pay period, Plaintiff was injured in that he was temporarily deprived of money owed to him, and he could not invest, earn interest on, or otherwise use these monies that were rightfully his. Accordingly, every day that said money was not paid to him in a timely fashion, he lost the time value of that money.").  That is sufficient.  Indeed, Defendant's exact argument has been rejected multiple times by courts in this Circuit in the NYLL § 191 context.

Two weeks ago, Judge Vitaliano rejected Defendant's exact argument that a "specific plan" needs to be alleged for standing in another NYLL § 191 class action, explaining:

> Unlike in *Maddox*, where the harm pleaded as resulting from the statutory violations was at best hypothetical, the harm plausibly pleaded here by plaintiffs as resulting from the violation of § 191 is actualized. To put it differently, the loss of the time value of the money owed to plaintiff is not a harm that *might* occur, but one that *has* occurred; it is not a harm that *might* materialize, but one that *has* materialized.  At its essence, defendant's attack is not one of law, but of economics. <u>Endeavor refuses to recognize here what it must certainly recognize in the handling of its own business affairs: there is a time value to the possession of money. Plaintiffs need not, as defendant suggests, spell out how the time value of money, as an economic theory, applies to their case. It does apply</u>; the delay in payment alleged, due to defendant's unlawful rate-of-payment practices, necessarily means that plaintiffs were forced to wait to receive money that, as compared with when they should have received it, was, when they did receive it, worth less.

---

labor' has been interpreted broadly to include countless physical tasks performed by employees." *See* Kopel Decl., Ex. 1 (DEPARTMENT OF LABOR, *Frequency of Pay Frequently Asked Questions*, March 2021).

*Levy v. Endeavor Air Inc.*, 2022 WL 16645829, at *4 (E.D.N.Y. Nov. 1, 2022) (italics in original, underline added).

Days prior, Judge Furman also rejected Defendant's exact argument—made by the same defense firm here—in a nearly-identical case asserting a violation of NYLL § 191. *See Gordon v. Bluetriton Brands, Inc.*, 1:22-cv-02138-JMF, ECF No. 43 (S.D.N.Y. Oct. 28, 2022)[2] (holding "there is Article III standing" because "the late payment of wages is a concrete harm. Monetary injury is a quintessential injury-in-fact, and there is an economic cost to the delayed receipt of money. Moreover, Plaintiff alleges in his complaint not only that he 'lost the time value of money,' but also that he was 'unable to do those things that every person does with their money, such as paying bills or buying goods that he needed or wanted to buy.'").

Three months ago, Judge Failla rejected Defendant's argument as well in the NYLL § 191 context, explaining as follows:

> Irrespective of the fact that Plaintiff ultimately received the entire sum of wages he was owed, this delay of payment, in and of itself, constitutes a concrete harm that suffices for purposes of Article III. This is because the "[t]emporary deprivation of money to which a plaintiff has a right constitutes a sufficient injury in fact to establish Article III standing." … This temporary withholding of money to which Plaintiff was owed — an injury Plaintiff purportedly suffered every pay period he worked for Defendants — is a concrete, economic harm.

*Gillett v. Zara USA, Inc.*, 2022 WL 3285275, at *6 (S.D.N.Y. Aug. 10, 2022) (citing *Vega*, 107 N.Y.S.3d at 288).

This reasoning is in line with another partial denial of a motion to dismiss issued last month in a similar NYLL § 191 class action captioned *Rodriguez v. Williams-Sonoma, Inc.*, Case No. 22-cv-02436-GRB-JMW (E.D.N.Y.). There, Judge Brown held that the time value of money lost due

---

[2] *See* Kopel Decl., Ex. 2, at 3-4.

to defendant's delayed wage payments was sufficient to confer standing.  *See* Kopel. Decl., Ex. 3, at 22 ("[I]n this instance, I believe that the allegations are sufficient. … I do believe there's sufficient inference here that the [] plaintiff had some actual concrete loss if in fact the claim proves to be the case.  That is he was entitled to weekly pay and he got biweekly pay.  There is based on time value of money some inferential basis to believe that there was some loss.").

In another NYLL § 191 recent decision, Judge Chen held that "[t]emporary deprivation of money to which a plaintiff has a right constitutes sufficient injury in fact to establish Article III standing. … **The Court flatly rejects Defendant's argument that Plaintiffs must plead 'specific factual allegations pertaining to their financial strategies or investment practices' to establish standing.  That would impose a pleading standard far higher than anything articulated by the Supreme Court or Second Circuit.**" *Jones v. Nike Retail Svcs., Inc.*, 2022 WL 4007056, at *1 (E.D.N.Y. Aug. 30, 2022) (emphasis added).

This argument was also rejected in the NYLL § 191 context by Judge Matsumoto in *Davis v. Banana Republic, LLC*, Case No. 21-cv-06160-KAM (E.D.N.Y. Apr. 5, 2022): "I don't think [Article III standing] is a basis on which the defendant would be successful in moving to dismiss. I just think the case law is really trending the other way and I would look to the many cases where the Courts have found an injury based on a violation of the New York Labor Law Section 191, especially if a laborer is deprived, even for a week or two, of the earned wages." Kopel Decl., Ex. 4, at 4.  And just a few months prior, Judge Seibel expressed the same sentiments while denying the motion to dismiss in *Corporan v. Regeneron Pharmaceuticals, Inc.*, Case No. 21-cv-05069-CS (S.D.N.Y. Jan. 24, 2022), Kopel Decl., Ex. 5, at 9-10 ("[W]here an employee loses the use of his money, it affects his ability to pay bills, buy food, medicine or gasoline, participate in savings and investment opportunities, and that's true whether or not the wages are never paid, partially

paid, or as here, paid late. … I, therefore, find that plaintiff here alleges a concrete harm sufficient for Article III standing.").

Defendant's argument was also rejected by Judge Kovner in *Caul v. Petco Animal Supplies, Inc.*, 2021 WL 4407856 (E.D.N.Y. Sep. 27, 2021).  There, the defendant argued "that an employee who has been paid all her wages but paid late would lack standing under Article III because she could only 'allege a bare procedural violation, divorced from any concrete harm.'"  *Id.* at *4 (citing *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1549 (2016)).  But Judge Kovner explained why this argument is incorrect:

> And in any event, the late payment of wages is a concrete harm. "[T]emporary deprivation of money to which a plaintiff has a right constitutes a sufficient injury in fact to establish Article III standing." *Porsch v. LLR, Inc.*, 380 F. Supp. 3d 418, 424 (S.D.N.Y. 2019); *cf. Habitat Educ. Ctr. v. U.S. Forest Serv.*, 607 F.3d 453, 457 (7th Cir. 2010) ("Every day that a sum of money is wrongfully withheld, its rightful owner loses the time value of the money."). That injury is especially acute for those workers "who are generally dependent upon their wages for sustenance," *Vega*, 175 A.D.3d at 1146.

*Id.* (internal citations omitted).  This Court has jurisdiction for these same reasons.

### B.  Defendant Does Not Argue That The Time Value Of Money Is Insufficient To Establish Article III Standing

Defendant acknowledges that "[i]n an effort to articulate standing, Plaintiff alleges that his injury is the lost 'time value of money.'"  MTD at 9.  Defendant does not contend anywhere in its briefing that loss of the time value of money is insufficient to establish Article III standing.

## II.  THE FIRST DEPARTMENT'S RULING IN *VEGA* CONTROLS THIS ACTION

The First Department has explained that "Labor Law § 198 (1-a) expressly provides a private right of action for a violation of Labor Law § 191."  *Vega,* 175 A.D.3d at 1146 (2019).  And "even if Labor Law § 198 does not expressly authorize a private action for violation of the requirements of Labor Law § 191, a remedy may be implied since plaintiff is one of the class for

6

whose particular benefit the statute was enacted, the recognition of a private right of action would promote the legislative purpose of the statute and the creation of such a right would be consistent with the legislative scheme." *Id.* Thus, in *Vega*, the First Department found two alternative bases for its decision that a private right of action exists for NYLL § 191 claims.

**The *Vega* decision is binding on this court because it constitutes guidance from the highest state court to address this issue to date**. As the Second Circuit has explained, the "Court is bound to apply the law as interpreted by a state's intermediate appellate courts unless there is persuasive evidence that the state's highest court would reach a different conclusion" *V.S. v. Muhammad*, 595 F.3d 426, 432 (2d Cir. 2010). That is an extremely high bar that Defendant's briefing does not even approach clearing. As explained below, courts that have examined *Vega*'s holding have followed it 18 times and never once rejected it.

### A.   At Least 18 Courts To Consider *Vega* Have Held That An Employee Has A Private Right Of Action For Late Wage Payments; Zero Have Disagreed

Since *Vega*, at least 18 courts have adopted its holding, and zero courts to consider *Vega* have disagreed. Defendant offers no basis why this Court should be the first:

| # | Case | Citation/Docket Cite | Judge(s) | Followed *Vega*? | Order |
|---|------|---------------------|----------|------------------|-------|
| 1 | *Levy et al v. Endeavor Air, Inc.* | 21-cv-04387, ECF No. 24 (E.D.N.Y. Nov. 1, 2022) | Judge Vitaliano | Yes | "Nothing Endeavor offers as a counterpoint even remotely suggests otherwise, much less provides 'persuasive evidence that the state's highest court would reach a different conclusion' than the First Department did in *Vega*" |
| 2 | *Gordon v. BlueTriton Brands, Inc.* | 22-cv-02138, ECF No. 43 (S.D.N.Y. Oct. 14, 2022) | Judge Furman | Yes | "I see no persuasive evidence that the New York Court of Appeals would reach a different conclusion than the First Department did in *Vega*…" |
| 3 | *Jones v. Nike Retail Svcs* | 2022 WL 4007056 (E.D.N.Y. Aug. 30, 2022) | Judge Chen | Yes | "The Court also rejects [Defendant's] argument that New York Labor Law § 191 does not create a private right of action." |

| | | | | |
|---|---|---|---|---|
| 4 | *Gillett v. Zara USA, Inc. et al* | 2022 WL 3285275 (S.D.N.Y. Aug. 10, 2022) | Judge Failla | Yes | "Thus, applying *Vega*, the Court finds that the NYLL affords a private right of action to enforce the late payment of wages." |
| 5 | *Davis v. Banana Republic, LLC* | 21-cv-06160 ECF No. 26-1 (E.D.N.Y. Apr. 5, 2022) | Judge Matsumoto | Yes | Denying MTD, because "even if the NY Court of Appeals hasn't ruled definitely on the issue, we have the [*Vega*] decision which many courts within the circuit have followed." |
| 6 | *Mabe v. Wal-Mart Associates, Inc.* | 2022 WL 874311 (N.D.N.Y. Mar. 24, 2022) | Judge McAvoy | Yes | "[T]he Court is not convinced that the New York Court of Appeals would reach conclusions different than those expressed in *Vega*. … the Court finds that under *Vega*, Plaintiff presents a legally plausible claim in the First Cause of Action." |
| 7 | *Elhassa v. Hallmark Aviation Services, L.P.* | 2022 WL 563264 (S.D.N.Y. Feb. 24, 2022) | Judge Liman | Yes | "The New York Appellate Division First Department has held that the New York Labor Law permits employees to seek liquidated damages for the untimely payment of wages even if the wages are no longer past due…" |
| 8 | *Corporan v. Regeneron Pharmaceuticals, Inc.* | 21-cv-05069, ECF No. 36 (S.D.N.Y. Jan. 24, 2022) | Judge Seibel | Yes | "Since *Vega* was decided in 2019, every court in this Circuit to consider the decision appears to have followed it. … I find that decision, and the logic of other courts within this Circuit applying it, to be well-reasoned and persuasive." |
| 9 | *Caul v. Petco Animal Supplies, Inc.* | 2021 WL 4407856 (E.D.N.Y. Sept. 27, 2021) | Judge Kovner | Yes | "Section 191 permits a manual worker to bring a civil action for delayed payment of wages—even if the wages have subsequently been paid." |
| 10 | *Rodrigue v. Lowe's Home Centers, LLC* | 2021 WL 3848268 (E.D.N.Y. Aug. 27, 2021) | Judge Kovner | Yes | "Since *Vega*, every court in this Circuit to consider that decision appears to have followed its construction of the New York Labor Law … and defendants present no persuasive reason to do otherwise." |
| 11 | *Phillips v. Max Finkelstein, Inc.* | 73 Misc. 3d 1 (N.Y. App. Term 2d Dep't Aug. 26, 2021) | Judges Ruderman, Driscoll, and Voutsinas | Yes | Agreeing with *Vega* "that a private right of action exists to enforce the rights established under section 198" |
| 12 | *Mabe v. Wal-Mart Associates, Inc.* | 2021 WL 1062566 (N.D.N.Y. Mar. 18, 2021) | Judge McAvoy | Yes | "[T]he Court is not convinced that the New York Court of Appeals |

| | | | | | |
|---|---|---|---|---|---|
| | | | | | would reach conclusions different than those expressed in *Vega*." |
| 13 | *Beh v. Community. Care Companions Inc.* | 2021 WL 3914297 (W.D.N.Y. Feb. 1, 2021) | Judge Scott | Yes | "[t]he Court concludes that there is a private right of action for violations of NYLL § 191." |
| 14 | *Caccavale v. Hewlett-Packard Co.* | 20-cv-00974, ECF No. 65-1 (E.D.N.Y. Jan. 12, 2021) | Judge Brown | Yes | "I am going to find that there is a remedy and therefore, I'm going to deny the motion to dismiss." |
| 15 | *Sorto v. Diversified Maintenance Systems, LLC* | 2020 WL 7693108 (E.D.N.Y. Dec. 28, 2020) | Judge Seybert | Yes | "Defendant's objections are OVERRULED … permitting a private right of action is appropriate." |
| 16 | *Quintanilla v. Kabco Pharmaceuticals, Inc., et al.* | 19-cv-06752 (E.D.N.Y. June 30, 2020) | Judge Chen | Yes | holding private right of action to pursue Section 191 claim "in light of the *Vega* decision" |
| 17 | *Duverny v. Hercules Medical P.C.* | 2020 WL 1033048 (S.D.N.Y. Mar. 3, 2020) | Judge Cote | Yes | Following *Vega*, noting "[a] plaintiff's entitlement to statutory damages pursuant to § 198(1-a) survives even if the employer pays the employee's base wages prior to the commencement of a civil action" |
| 18 | *Rojas v. Hi-Tech Metals, Inc.* | 2019 WL 4570161 (Sup. Ct. Queens Cnty. Sept. 11, 2019) | Judge Buggs | Yes | "In light of the sentiments set forth in *Gottlieb* by the Court of Appeals and the holding in *Vega*[,] Defendant's motion to dismiss Plaintiff's NYLL §§ 191(1)(a) and 198 (1-a) claims is denied." |

By contrast, every case Defendant cites pre-dates *Vega*. The score on this front is 18-0 and counting for courts that have actually considered *Vega*'s holding.

**B.      Courts Held That A Private Right Of Action Exists Long Before *Vega***

Defendant contends that "for decades, New York state and federal courts consistently (and correctly) held that a mere pay frequency violation, without any actual underpayment of the wages, did not trigger a private right to damages under Article 6."  MTD at 4.  That is simply not true. District courts within the Second Circuit have long held that a private right of action exists under NYLL § 191.  *See Wiggins v. Hain Pure Protein Corp.*, 829 F. Supp. 2d 231, 241 (S.D.N.Y. 2011) ("[p]ursuant to § 191, certain kinds of employees can bring a claim for an employer's failure to

pay their wages on a certain schedule."); *Cuzco v. Orion Builders, Inc.*, 2010 WL 2143662, at *4 (S.D.N.Y. May 26, 2010) ("Defendants paid wages every two weeks (rather than weekly) and paid these wages no earlier than two weeks after the end of the period in which those wages were earned. These facts are undisputed. Therefore, Plaintiffs [] are entitled to summary judgment on their claims that Defendants violated the timely payment provisions of NYLL § 191."); *Urtubia v. B.A. Victory Corp.*, 857 F. Supp. 2d 476, 481 (S.D.N.Y. 2012) (denying motion to dismiss claims for "violations of New York Labor Law section 191(1)(a), which requires that wages be paid weekly"); *Gaughan v. Rubenstein*, 261 F. Supp. 3d 390, 426 (S.D.N.Y. 2017) ("Defendants' delay in paying Plaintiff her wages, either by failing to issue paychecks or by forward-dating her paychecks, violates the prompt payment requirements of the … NYLL."); *Lopez-Serrano v. Rockmore*, 132 F. Supp. 3d 390, 403-04 (E.D.N.Y. 2015) ( "[a]n employer's failure to timely pay its employees for their work" entitles the employees to a remedy under NYLL § 198."); *Myers v. Hertz Corp.*, 624 F.3d 537, 543 (2d Cir. 2010) (holding NYLL § 191 "guarantees the timely payment of wages by employers"); *Pashaian v. Eccelston Properties, Ltd.*, 1993 WL 322835, at *2 (S.D.N.Y. Aug. 16, 1993) (the purpose of NYLL § 191 and its damages provision (NYLL § 198) is to ensure "timely payment" of wages); *Ortiz v. Arthur T. Mott Real Estate, L.L.C.*, 2:15-cv-03940, ECF No. 73 (Order re: Motion to Dismiss) (E.D.N.Y. Sept. 15, 2016) (denying defendant's motion to dismiss plaintiffs' NYLL § 191 claim and stating that NYLL § 191 "guarantees the timely payment of wages by employers"); *Belizaire v. Rav Investigative & Sec. Servs.*, 61 F. Supp. 3d 336, 354 (S.D.N.Y. 2014) (allegation that bounced paychecks resulted in delayed payment of wages was sufficient to set forth a cause of action for "late payments" under New York Labor Law § 191); *Poplawski v. Metroplex on the Atl., L.L.C.*, 2012 WL 1107711, at *12 (E.D.N.Y. Apr. 2, 2012) (granting class certification of NYLL § 191 claims where it was

alleged that there was a "failure to pay wages in a timely manner"); *Gonzales v. Gan Israel Pre-Sch.*, 2014 WL 1011070, at *12 (E.D.N.Y. Mar. 14, 2014) (plaintiff who performed janitorial work was a manual worker entitled to recover under § 191).

In a decision issued shortly before *Vega*, Judge Feuerstein also held that a private cause of action existed. *Scott v. Whole Foods Market Grp., Inc.*, 2019 WL 1559424 (E.D.N.Y. Apr. 9, 2019). There, the court found that a private right of action existed based on several decisions from the Second Circuit and N.Y Court of Appeals addressing claims under NYLL § 191 in which, "neither the Second Department nor the Court of Appeals suggested, let alone held that the plaintiffs did not have a right to bring a claim under § 191 in the first instance. *Id.* at *2. Judge Feuerstein also noted that "[t]he Court of Appeals also touched upon actions brought pursuant to NYLL § 191 within an opinion responding to questions certified to it by the Second Circuit." *Id.* at *3 (citing *Pachter v. Bernard Hodes Grp., Inc.*, 10 N.Y.3d 609, 891 (2008)). Indeed, "the Court of Appeals implicitly assumed that an employee claiming a violation of § 191 has asserted a substantive violation and is entitled to utilize the remedies set forth in § 198." *Id.*

Defendant's attempt to portray *Vega* as an anomaly is not based in reality. The truth is that there was a split in authority on this issue, which *Vega* resolved.

### C.    Failure To Make Timely Payment Of Wages Has Dire Consequences For The Low-Income Workers NYLL § 191 Was Designed To Protect

Defendant's briefing argues that its frequency-of-pay violations did not damage Plaintiff and class members. But Defendant never pauses to acknowledge the impact its violations of this law have on its low-wage employees. This is coming from a perspective of considerable privilege: Defendant's counsel and its management thankfully may not have experience in what it is like living paycheck to paycheck. But struggling to make ends meet is a reality for most Americans and a lack of timely access to wages has given rise to a massive payday loan industry in the United

States.  According to the Federal Reserve, "[f]orty-six percent of adults say they either could not cover an emergency expense costing $400, or would cover it by selling something or borrowing money."[3]  Prompt access to wages could mean the ability to avoid getting their telephones, electricity, or utilities shut off.  Or to avoid going into debt.  Or to be able to buy their child a birthday present.

This is not a random, meaningless law that the New York State Legislature made up out of nowhere.  It has been a respected edict for millennia.  *See* Deuteronomy 24:14-15 (English Standard Version) ("You shall not oppress a hired servant who is poor and needy, whether he is one of your brothers or one of the sojourners who are in your land within your towns.  You shall give him his wages on the same day, before the sun sets (for he is poor and counts on it), lest he cry against you to the Lord, and you be guilty of sin.").  And as the Court of Appeals has explained, this law was "intended for the protection of those who are dependent upon their wages for sustenance." *People v. Vetri*, 309 N.Y. 401, 405 (1955).  This law "makes some sense, because even a short delay in paying a lower-income employee's wages can cause severe hardship." LABOR LAW ARTICLE: 6: A MISUNDERSTOOD LAW THAT FULLY PROTECTS ALL EMPLOYEES WAGES, 80 Alb. L. Rev. 1355 (2016/2017).  These are real people that suffer real-life consequences from wage violations that Defendant callously pretends are harmless "errors."

Even Defendant would have a hard time disputing this: without a private right of action, this lawsuit would never have been filed, and Defendant would simply continue violating its employees' statutory rights.  And if this motion is granted, it will continue to do just that.

---

[3] Kopel Decl., Ex. 9, Report on the Economic Wellbeing of U.S. Households in 2015, Board of Governors of the Federal Reserve System, *available at* https://www.federalreserve.gov/2015-report-economic-well-being-us-households-201605.pdf.

III.    **THERE IS AN EXPRESS PRIVATE RIGHT OF ACTION FOR VIOLATIONS OF NYLL § 191**

Although Defendant claims "it is hard to imagine a decision that got it more wrong" than *Vega*, MTD at 10, that is incorrect. *Vega*'s holding that "Labor Law § 198 (1-a) expressly provides a private right of action for a violation of Labor Law § 191," 175 A.D.3d at 1146, is well-supported by legislative history, guidance from the New York Department of Labor, case law interpreting analogous provisions of the Fair Labor Standard Act, and common sense.

A.    **Wages Become "Unpaid" If Not Paid When They are Due**

Defendant argues the Court in *Vega* incorrectly "interpreted underpayment to include payments that were 'untimely,'" and that "a violation for § 191 without an underpayment does not trigger damages under § 198." MTD at 10-11. That is wrong. There is no meaningful difference between late payment and nonpayment – at the end of the first week of each biweekly pay period, Defendant failed to pay Plaintiffs' wages. That is nonpayment. The "underpayment" and "amount due" at that time was the entire week's pay. The First Department explained this: "[t]he moment that an employer fails to pay wages in compliance with section 191(1)(a), the employer pays less than what is required." *Vega*, 175 A.D.3d at 1146. Any holding otherwise would allow an employer to "cure a violation and evade the statute by paying the wages that are due before the commencement of an action." *Id.* at 1145.

As the Ninth Circuit explained when rejecting this same argument in the FLSA context, "[Defendants] urge us to distinguish between late payment and nonpayment, but offer us no principled way to make such a distinction. We cannot come up with one either… Any kind of sliding scale [] would force employees, employers, and courts alike to guess when 'late payment' becomes 'nonpayment.'" *Biggs v. Wilson*, 1 F.3d 1537, 1539-40 (9th Cir. 1993).

13

The Ninth Circuit was right, and its rationale is equally applicable here.  Defendant does not and cannot explain any distinction between late payment and nonpayment.  How long must an employee wait until a purported late payment becomes nonpayment, and how are courts meant to draw such a distinction?  Would a claim by an employee whose wages were withheld for three weeks, three months, or three years still be a non-wage claim for late payment?  According to Defendant, the answer would be yes.  Under this interpretation, the liquidated damages provision of Section 198 (1-a), intended to deter violations of the statute, could never be imposed for nonpayment of wages so long as payment was made prior to commencement of a lawsuit.  That makes no sense and undermines the entire purpose of the statue.  *See Biggs*, 1 F.3d at 1539 ("If a payday has passed without payment, the employer cannot have met his obligation to 'pay' … unless there is a due date after which minimum wages become unpaid, imposing liability for both unpaid minimum wages and liquidated damages would be meaningless.").

Other courts have also recognized the problem with Defendant's argument.  For example, in *Brooks v. Village of Ridgefield Park*, 978 F. Supp. 613, 617 (D.N.J. 1997), the plaintiff was a K-9 officer in the Village of Ridgefield Police department who challenged the Village's schedule of paying officers' overtime compensation monthly.  There was no dispute that the officers had agreed to this payment schedule in their collective bargaining agreement, *see id*. at 617, yet the plaintiff alleged that the delayed payment of overtime wages violated the FLSA:

> [if] an employer is not obligated to compensate an employee for overtime worked during a given week on the regular pay day for that week, this would lead to an ambiguous standard for determining when wages became 'unpaid' under the statute. Employers would then be permitted to withhold overtime compensation for some undefined period of time without incurring any legal liability and employees would be left with no recourse during this delay. Allowing such a delay in the payment of wages would run counter to the primary purpose of the FLSA to "protect certain groups . . . from substandard wages and excessive hours."

14

*Id*. at 618 (emphasis added, citing *Brook. Sav. Bank v. O'Neil*, 324 U.S. 697, 706 (1945)).  On appeal, the Third Circuit affirmed.  *Brooks v. Village of Ridgefield Park*, 185 F.3d 130, 140 (3d Cir. 1999).  The same reasoning applies here.  *See also Donovan v. Kaszycki & Sons Contractors, Inc.*, 959 F. Supp. 860, 869 (S.D.N.Y. 1984) ("The fact that Defendants may have intended to pay the employees at some future date, or that some employees might have acquiesced, albeit grudgingly, to deferred payment, has no bearing on the fact that the statute was violated.").

> **B.     Legislative Memoranda From 1966 And 1967 Show An Intent To Create A Private Right Of Action With Liquidated Damages From Late Payment Of Wages**

NYLL § 198(1-a) expressly provides a private right of action for any "wage claim" in Article Six.  In *Vega*, the First Department noted the obvious:  late payment of wages is a type of wage claim.  *Vega*, 175 A.D. 3d at 1145 ("contrary to defendant's argument that § 198 provides remedies only in the event of nonpayment or partial payment of wages (but not in the event of late payment of wages, the plain language of the statute indicates that individuals may bring suit for any 'wage claim' against an employer")).  The legislative comments to the Labor Law show that *Vega* was right.  Claims for untimely payment under NYLL § 191 are the precise sort of "wage claims" intended to be covered by NYLL § 198 (1-a).

In 1966, the New York Legislature passed a bill repealing the previous iteration of Article Six and enacting a new version which provides the basis for the current law in place today.  A memorandum accompanying the bill explained that "[t]he bill clarifies the application of the <u>wage payment provisions</u> for manual workers" by "indicat[ing] that weekly payment of wages applies to manual workers, except those employed by a non-profit organization."  Kopel Decl., Ex. 6, Memorandum of the Industrial Commissioner, June 3, 1966, Bill Jacket, L 1966, ch. 548, at 4 (emphasis added).  In referring to laws governing the frequency of payments to manual workers

as "wage payment provisions," the language of the memorandum cuts against Defendant's argument that claims for untimely payments are not "underpayments." *See* MTD at 10-11.

In 1967, the Legislature enacted Section 198, allowing for a private cause of action with a liquidated damages provision. According to the memorandum accompanying the bill, its purpose was "[t]o assist the enforcement of the wage payment … laws by imposing greater sanctions on employers for violation of those laws." Kopel Decl., Ex. 7, Memorandum of the Industrial Commissioner, April 5, 1967, Bill Jacket, L 1967, ch. 310, at 6. Again, there is no reason to believe that a statute meant to cover "wage payment laws" was intended to be construed in a manner that it should not govern the "wage payment provisions" from one year earlier.

To the contrary, the memorandum makes clear that the purpose of the liquidated damages provision of the bill as to "compensate the employee for the loss of the use of the money to which he was entitled." Kopel Decl., Ex. 7, at 5. That is the *precise* injury experienced by workers receiving their wages late. And in a section titled "arguments in support of the bill," the memorandum explains that bill sought to remedy a scenario where employers "will have had the free use of their employees' money for some time and their employees will have been seriously inconvenienced. The calculation of interest on the money due would be difficult as it would have accrued in small amounts week by week. This bill follows the example of the Federal Fair Labor Standards Act in providing an easily-calculable formula for liquidated damages." This shows a legislative intent for the liquidated damages provision to be used as a replacement for small amounts of weekly interest lost.

The 1967 Memorandum makes clear that the Legislature considered and rejected Defendant's argument that "the appropriate measure of their damages is liquidated damages on the lost time value of money (rather than the full week of wages that was allegedly paid late)." MTD

at 9-10.  It notes that "[s]ome persons may claim that the imposition of liquidated damages is unreasonable."  Kopel Decl., Ex. 7, at 5.  However, the liquidated damages provision was passed anyway in the hopes that it "would establish one more safeguard to assure employees or proper payment of wages under the law and would thus be a deterrent against abuses and violations." Kopel Decl., Ex. 7, at 13.

In sum, the Legislature explained its intentions clearly at the time it passed the statutes that it was creating a private right of action for liquidated damages specifically to "compensate the employee for the loss of the use of the money to which he was entitled."  Kopel Decl., Ex. 7, at 5. Against this backdrop, Defendant's insistence that this provision was not intended to cover the rules ensuring that workers would receive prompt access to their money makes no sense.

### C.      The "No Wage Theft Loophole Act of 2021" Shows The New York Legislature's Support For *Vega*'s Interpretation Of NYLL § 198

In 2021, New York signed a bill into law amending Article 6 of the New York Labor Law, and in particular, Section 198.  L. 2021, c. 397, Kopel Decl. Ex. 10.   Indeed, the purpose of the Act was to provide "clari[t]y for the courts once and for all" in their analysis of the statute.  *Id.*

By the time the Act was passed, *Vega*'s holding was widely accepted.  "[I]n amending the statute …, the Legislature was presumably aware of all existing decisions interpreting it."  *People v. Robinson*, 95 N.Y.2d 179, 184 (2000) (citation omitted).   Those myriad decisions followed *Vega* when construing section 191.  "That the Legislature chose not to narrow the statutory language [when Article 6 was amended in 2021] despite these decisions evinces an intent to apply the statute as written."  *Robinson*, 95 N.Y.2d at 184 (citation omitted).

### D.      The New York Department Of Labor ("DOL") Has Explicitly Held That A Private Right Of Action Exists

Although Defendant argues "it was understood that any penalty for untimely wages was to be assessed solely by the Commissioner pursuant to §§ 197 or 218," MTD at 4-5, that argument is

belied by the DOL's explicit holding that a private right of action exists.  Indeed, in an October 28, 2010 Opinion Letter, the DOL reiterated that NYLL § 191 is enforceable by a private right of action.  *See* Kopel Decl., Ex. 8, RO-10-0003.  In response to the employer's question as to whether employees may be required to "sign-off" on their timesheets, the Department of Labor responded that while an employer could require an employee to sign off on the time sheet, the employee's signature "neither relieves the employer of its obligations under []Section [191], nor does it prevent an employee from filing a complaint with this Department or *bringing an action for a violation of [NYLL § 191.]*"  *Id*. at pp. 4 (emphasis added).  Thus, it is the view of New York's DOL that employees are empowered to bring private suits for violations of NYLL § 191.

The "[i]nterpretation of a statute by the agency charged with its enforcement is, as a general matter, given great weight and judicial deference so long as the interpretation is neither irrational, unreasonable nor inconsistent with the governing statute."  *Moran Towing & Transp. Co. v. N.Y. State Tax Com.*, 72 N.Y.2d 166, 173 (1988).  Therefore, the DOL's October 28, 2010 opinion letter represents the agency's interpretation and should be given judicial deference.

### E.    NYLL § 218 Does Not Address Violation of NYLL § 191

Defendant argues that NYLL § 218 was created for enforcement of NYLL violations other than non-payment of wages and would therefore foreclose a private right of action for Section 191 claims.  MTD at 12.  This is incorrect as § 218 simply provides the commissioner of labor with enforcement mechanisms, separate and apart from the private right to recover damages.

This argument was already rejected by the New York Appellate Division Second Department.  In *Phillips*, the court found that "[a]lthough section 218 authorizes the Commissioner to impose civil penalties for violations of article six of the Labor Law, it does not preclude private causes of action."  73 Misc. 3d, at 3-4. "Labor Law § 198, which authorizes the Commissioner to bring 'any legal action necessary' on behalf of 'any employee paid less than the

wage to which he or she is entitled' [] also specifically authorizes wage claims by employees, and states that the remedies provided by article 6 of the Labor Law 'may be enforced simultaneously or consecutively so far as not inconsistent with each other.'" *Id.* at 4 (internal citations omitted).

Defendant does not argue that a private right of action is not available pursuant to Article 6 of the NYLL which covers Plaintiff's instant claim.  *See Gottlieb*, 82 N.Y.2d at 461 ("the statutory provision in [NYLL] article 6 which generally regulates payment of wages by employers and creates reciprocal rights of employees is Labor Law § 191"); *Truelove v. Northeast Capital & Advisory*, 95 N.Y.2d 220, 224-225 (2000) ("an employer [is] subject to both civil and criminal liability for failing to pay 'wages' as required by [NYLL § 191]"); *see also Sorto*, 2020 WL 8413553, at *2 (recognizing that a violation of NYLL § 191 constitutes "a failure to pay wages").

Moreover, there is no conflict between Section 198, and Section 218.  *See* NYLL § 218(4) ("…the civil penalty provided for in this section shall be in addition to and may be imposed concurrently with any other remedy or penalty provided for in this chapter"); NYLL § 198(2) ("…the remedies provided by this article may be enforced simultaneously or consecutively so far as not inconsistent with each other"); *see also Vega*, 175 A.D. 3d at 1147 ("[NYLL § 198] provides that individuals may bring suit against an employer for violations of the labor laws, even if the Commissioner chooses not to do so.").

Accordingly, the existence of a regulatory mechanism does not eliminate the structure of Article 6, which permits employees to privately enforce wage claims.  Section 198(1-a) "provides for an express private right of action for underpayment of wages."  *Mabe*, 2022 WL 874311, at *6. Defendant's argument must therefore be rejected, as the weight of authority has agreed with *Vega*'s holding that a violation of Section 191 is an underpayment triggering Section 198.

IV.     **PLAINTIFF IS ENTITLED TO LIQUIDATED DAMAGES**

A.     **Defendant's Late Payments Do Not Exempt It From Liquidated Damages**

According to Defendant, there are no wages due, and therefore "liquidated damages must be calculated as $0." MTD at 7; *see also id.* At 8 ("Thus, if the case were ever tried, the amount Plaintiff could recover for 'underpayment' is $0."). Defendant is wrong.

This exact argument was analyzed and rejected by the First Department in *Vega*:

> We reject defendant's implicit attempt to read into section 198 (1-a) an ability to cure a violation and evade the statute by paying the wages that are due before the commencement of an action. The employer may assert an affirmative defense of payment if there are no wages for the "employee to recover" (Labor Law § 198 [1-a]). However, payment does not eviscerate the employee's statutory remedies.

175 A.D.3d at 1145. As noted above, the First Department also explained that "[t]he moment that an employer fails to pay wages in compliance with section 191(1)(a), the employer pays less than what is required." *Id.* at 1145. Thus, the "amount due" was Plaintiff's earnings at the end of the first week for each biweekly pay period. The fact that this was paid late by Defendant does not "eviscerate the employee's statutory remedies" to recover "an additional amount as liquidated damages equal to one hundred percent of the total amount of wages found to be due." *See also* Kopel Decl., Ex. 2 at 5, *Gordon v. Bluetriton* ("Third, contrary to Defendant's arguments, I — at least tentatively — conclude that liquidated damages in the form of 100 percent of the wages that were paid late are available as a remedy under the Labor Law.").

The First Department based this holding on a comparison with the FLSA's liquidated damages provision. The FLSA imposes liquidated damages for violations in an amount equal to "the amount of … unpaid minimum wages, or their unpaid overtime compensation, as the case may be." 29 U.S.C. § 216(b). Based on this, the U.S. Supreme Court held that "regardless of whether an employee has been paid wages owed before the commencement of the action, the

statute provides a liquidated damages remedy for the 'failure to pay the statutory minimum on time,' in order to provide 'compensation for the retention of a workman's pay which might result in damages too obscure and difficult of proof for estimate other than by liquidated damages.'" *Vega*, 175 A.D.3d at 1146 (quoting *Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 707 (1945)).  The First Department applied the same reasoning to NYLL's liquidated damages provision.  *Id.*

The *Vega* decision also bases its reasoning on the NYLL's "legislative history" which "reflects that in addition to imposing 'stronger sanctions' to compel employer compliance, '[t]he imposition of liquidated damages will also compensate the employee for the loss of the use of the money to which he was entitled.'  The employee loses the use of money whether he or she is never paid, partially paid, or paid late."  *Vega*, 175 A.D.3d at 146 n.2 (quoting Governor's Approval Mem, Bill Jacket, L 1967, ch 310 at 1524; 1967 NY Legis. Ann. at 271).

The *Vega* decision is well-reasoned.  The Second Circuit has explained that NYLL § 198 (1-a), although not identical to the FLSA liquidated damages provision, has "no meaningful differences, and both are designed to deter wage-and-hour violations in a manner calculated to compensate the party harmed."  *Rana v. Islam*, 887 F.3d 118, 123 (2d Cir. 2018).  This lack of "meaningful differences" was intentional.  "The New York State legislature has now twice amended its liquidated damages statute to conform as closely as possible to the FLSA's liquidated damages provision."  *Chowdhury v. Hamza Express Food Corp.*, 666 Fed. Appx. 59, 61 (2d Cir. Dec. 7, 2016).  These amendments suggest "an interest in aligning NYLL liquidated damages with the FLSA and can be read as a practical recognition of the dual punitive and compensatory effects of an award of liquidated damages under the statute."  *Xochimitl v. Pita Grill of Hell's Kitchen, Inc.*, 2016 WL 4704917, at *17 (S.D.N.Y. Sept. 8, 2016).

Here, Defendant is arguing that the New York Legislature's use of the words "wages found

to be due" in the NYLL statute suggests that payment of untimely compensation before commencement of an action provides employers with a safe harbor against the imposition of liquidated damages. But this argument would theoretically apply with even greater force to the language used by the FLSA which calculates liquidated damages as the "amount of unpaid [] wages." *Compare* NYLL § 198 (1-a) *with* 29 U.S.C. § 216(b). If Defendant's argument were correct, Congress's use of the word "unpaid" would indicate that the balance of unpaid wages would need to remain outstanding at the commencement of a suit in order for courts to impose liquidated damages for violations of the FLSA. That is not the case.

Instead, the Supreme Court rejected this argument in *Brooklyn Savings Bank*. There, the court noted that (like the NYLL provisions), "[n]either the statutory language, the legislative reports not the debates indicates that the question at issue was specifically considered and resolved by Congress. In the absence of evidence of specific Congressional intent, it becomes necessary to resort to a broader consideration of the legislative policy behind this provision as evidenced by its legislative history and the provisions in the structure of the Act." 324 U.S. at 705-06. Here too, just as the First Department did in the *Vega* decision, New York's Court of Appeals would be required to turn to the legislative policy behind NYLL § 198 (1-a). And in doing so, it would find liquidated damages are appropriate, even if payments were made before the action was filed.

Consider the implications of Defendant's argument. Manual workers that are paid biweekly instead of weekly would be required to refuse their biweekly payments in order to avoid waiving their rights to collect liquidated damages under the statute. This would contradict the entire "object of the law which is to compel prompt payment of daily wages to the small wage earner." *People v. Vetri*, 309 N.Y. 401, 407 (1955) (citing former NYLL § 196). Employers violating the statute would get off scot-free and manual workers would have no recourse. "Such

an interpretation would nullify the effectiveness of the Act." *Brooklyn Sav. Bank*, 324 U.S. at 712.[4]  *See Scott*, 2019 WL 1559424, at \*4 ("the interpretation urged by Whole Foods leaves an aggrieved employee with no recourse, but rather allows an employer to perpetually violate § 191 simply by paying the employee, in full, after a delay beyond the one-week period set by statute. Permitting an employer to flout the requirements of § 191 with impunity, so long as it eventually pays its employee the wages owed, is inconsistent with the stated purposes of the NYLL.").

### B.      Defendant Incorrectly Conflates Injury With Damages

Defendant argues that the "amount due" under the statute should be calculated as the time value of the late-paid money, because that is the basis for Article III standing.  That is wrong.

As noted in the section above, the "amount due" is properly calculated as of the date of the violation, which occurs "[t]he moment that an employer fails to pay wages in compliance with section 191(1)(a)." *Vega*, 175 A.D.3d at 1145.  And as *Vega* explained, "the employer may assert an affirmative defense of payment if there are no wages for the "employee to recover" (Labor Law § 198 [1-a]).  However, payment does not eviscerate the employee's statutory remedies." *Id*.  In other words, the Legislature enacted a statutory remedy in this case that goes beyond the concrete injury that would be necessary for a showing of standing under Article III.

However, the fact that a litigant is entitled to statutory damages under the law "does not relieve courts of their responsibility to independently decide whether a plaintiff has suffered a concrete harm under Article III." *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2205 (2021).  As the Supreme Court explained: "For standing purposes, therefore, an important difference exists between (i) a plaintiff 's statutory cause of action to sue a defendant over the defendant's violation

---

[4] Defendant cites *Sarmiento Perez v. Comhar Group LLC*, 2020 WL 1364908 (E.D.N.Y. Mar. 6, 2020) to argue that "a plaintiff will not recover an award of damages for the 'underpayment.'" MTD at 6.  But all that case held is that a plaintiff cannot recover liquidated damages twice for the same violation. *Id.* at \*7.

of federal law, and (ii) a plaintiff 's suffering concrete harm because of the defendant's violation

of federal law." *Id.*  Therefore, the Supreme Court in that case found plaintiffs could seek statutory

damages of $100-$1,000 under the Federal Credit Reporting Act; but only if they could establish

injury by showing Article III injury based on a "defamatory statement." *Id.* at 2208.

      The same principle applies here.  Plaintiff has standing because he was injured by losing

the time value of his money.  Because he has Article III standing, he can seek the statutorily-

created remedy of liquidated damages equal to the amount due at the time of the violation, in

accordance with Section 198, as interpreted by *Vega* and other courts.  *See also* Kopel Decl., Ex.

2, at 5, *Gordon v. Bluetriton* ("I at least tentatively conclude that liquidated damages in the form

of 100 percent of the wages that were paid late are available as a remedy under the Labor Law.").

## V.    NYLL § 191 ALSO PROVIDES AN IMPLIED PRIVATE RIGHT OF ACTION

      Citing the New York Court of Appeals' recent decision in *Konkur v. Utica Academy of*

*Science Charter Sch.*, 38 NY3d 38 (2022), Defendant argues "the legislative intent of § 191 does

not favor an implied right of action."  MTD at 11.  As an initial matter, this argument is inapplicable

to *Vega*'s holding that an <u>express </u>right of action exists and is therefore moot to the extent that the

Court follows that holding.  Moreover, Defendant neglects to mention that this exact argument—

along with its reliance on *Konkur*—has been squarely rejected in the NYLL § 191 context:

> To the extent Defendant contends that the statute already provides
> an administrative mechanism to enforce Section 191 violations, the
> legislative history reflects the administrative nature of the Section
> 191 scheme, and that there is no private right of action in § 198 for
> a mere untimely payment of wages, *Vega* addressed those concerns.
> The *Vega* Court found that the purposes of Sections 191 and 198 are
> to protect employees who are "dependent upon their wages for
> sustenance" and deter labor law violations. *Vega*, 175 A.D.3d at
> 1146 (citation omitted). "And contrary to defendants' emphasis on
> administrative enforcement, Section 198 lets an individual sue even
> where the administrator declines," *Caul*, 2021 WL 4407856, at *3
> (citing Vega, 175 A.D.3d at 1147), which the *Vega* Court found to
> be "consistent with the legislative scheme, as section 198 explicitly

> provides that individuals may bring suit against an employer for
> violations of the labor laws, even if the Commissioner chooses not
> to do so." *Vega*, 175 A.D.3d at 1147.

*Mabe*, 2022 WL 874311, at *6 (citing *Elhassa*, 2022 WL 563264, at *2 ("[T]he question in *Konkur*

had to do with the implication of a private right of action [under Labor Law § 198–b, which

prohibits wage kickbacks]. *Vega* rested on a different ground.'")).

Other courts have also explicitly sided with *Vega* in holding that an implied cause of action

exists; none have disagreed.  *See Scott*, 2019 WL 1559424, at *3-*4 (analyzing *Sheehy* factors,

and holding "[t]he discretionary nature of the Commissioner's authority coupled with the

references to employee actions in § 198 compels the conclusion that a private action under § 191

is consistent with the legislative scheme."); *Sorto*, 2020 WL 8413553, at *2 ("[A]s the courts in

*Vega* and *Scott* recognized, this conclusion is consistent with an implied private of action under

section 191, even if the statute may not fairly be read to expressly provide one."); *Caul*, 2021 WL

4407856, at *3 ("Defendants contend that the statute already provides an administrative

mechanism to enforce Section 191 violations, the legislative history reflects the administrative

nature of the Section 191 scheme, and the purpose of Section 191 is 'to ensure that employers

make payroll payments at all.' But *Vega* addressed those general concerns, finding that the

purposes of Sections 191 and 198 are to protect employees who are 'dependent upon their wages

for sustenance' and deter labor law violations. And contrary to defendants' emphasis on

administrative enforcement, Section 198 lets an individual sue even where the administrator

declines.") (internal citations omitted).

Dated: November 14, 2022                              Respectfully submitted,

                                                      By:   */s/ Yitzchak Kopel*
                                                            Yitzchak Kopel

**BURSOR & FISHER, P.A.**
Yitzchak Kopel
Alec M. Leslie
888 Seventh Avenue
New York, NY 10019
Telephone: (212) 989-9113
Facsimile: (212) 989-9163
Email: ykopel@bursor.com
       aleslie@bursor.com

*Counsel for Plaintiff*